# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHRISTINE L. KRESYMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-00507-CV-W-NKL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Christine L. Kresyman ("Kreysman") challenges the Social Security Commissioner's ("Commissioner") denial of her application for disability insurance benefits and supplemental security income benefits under the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq*. Kresyman has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Kresyman argues that the record does not support the Administrative Law Judge's ("ALJ") finding that she was not under a disability because: (1) the ALJ did not give appropriate weight to every medical opinion, and (2) the ALJ did not consider all evidence when formulating Kresyman's two Residual Functional Capacity Assessments ("RFC"). Because this Court finds no reversible error in the ALJ's decision, Kresyman's Complaint [Doc. #1] is denied.

1

## I. Background

### A. Procedural History

Kresyman filed her initial application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Act on April 5, 2004, in which she alleged disability beginning on September 2, 2001. This application was denied by the Commissioner on August 19, 2004. Kresyman applied for and was granted a hearing before ALJ Eileen Burlison, which took place on December 1, 2005, in Kansas City, Missouri. The ALJ rendered her decision on April 26, 2006, finding that Kresyman was not disabled. Kresyman requested review of that decision by the Appeals Council of the Social Security Administration ("Appeals Council"), and that request was denied on July 16, 2007, making the ALJ's determination the final determination of the Commissioner.

On March 6, 2008, Kresyman filed a timely complaint with this Court challenging the Commissioner's final determination. The Commissioner moved to reverse and remand the ALJ's decision in order for the ALJ to consider the vocational expert testimony in the record regarding Kresyman's ability to perform other jobs. Kresyman consented to the remand, and on March 10, 2008, this Court entered an Order reversing the ALJ's decision and remanding the case to the Commissioner for proper consideration of Kresyman's claim. On March 26, 2008, the Appeals Council remanded Kresyman's case for a new hearing before an ALJ. This new hearing was held before ALJ Jack

2

McCarthy on January 9, 2009, in Kansas City, Missouri. The ALJ rendered his decision on April 22, 2009, finding that Kresyman was not disabled. Kresyman did not request review of that decision by the Appeals Council, making the ALJ's determination the final determination of the Commissioner.

B. Factual History[1]

Kresyman was born on March 13, 1972, and was 32 years old at the time of her application for disability insurance and supplemental security income and 36 years old at the time of the January 9, 2009 hearing. According to the ALJ in the April 22, 2009 decision, Kresyman has the following severe impairments: possible osteoarthritis of the knees, mild degenerative disc disease of L1-2, spondylosis of the cervical spine, morbid obesity, migraine headaches, bipolar disorder, and panic disorder. The ALJ also noted that Kresyman was evaluated for a tremor in July 2002, but he concluded this condition was not a severe impairment. Although Kresyman was diagnosed with fibromyalgia in July 2002,[2] the ALJ concluded this diagnosis was not supported by the medical evidence and thus not a medically determinable impairment.

Kresyman is a high school graduate who attended college for two-and-a-half years and later was certified as a nurse's assistant. She held seven jobs between August 1993

---

[1] The complete facts and arguments are presented in the parties' briefs [Docs. 6, 9] and are duplicated here only to the extent necessary. Portions of the parties' briefs may be adopted without quotation designated.

[2] Fibromyalgia is a syndrome of chronic pain of musculoskeletal origin but uncertain cause, consisting of pain throughout the body and point tenderness in at least 11 of 18 specified sites. *Stedman's Medical Dictionary* 148730 (27th ed. 2000).

3

and June 2003.  Kresyman testified that she quit her last job as a certified nurse's assistant because of pain and difficulty walking.  Her work history indicates that she has not worked since June 2003.

The evidence of record consists primarily of testimony and treatment records from Kresyman and 14 professionals who have been involved in Kresyman's treatment.

Kresyman testified that she suffers from pain throughout her body, migraines, diarrhea, dizziness, and sleeplessness.  She does not drive unless necessary, which she estimates to be between once a month and once every three months.  She lives with her husband and her four daughters, who were 17, 15, 11, and 10 at the time of the January 9, 2009 hearing.  Her husband works outside of the home as a corrections officer.  Kresyman testified that normally she is unable to do common household chores such as cooking and cleaning.  Once a month, Kresyman shops for groceries.  She has difficulty sleeping and testified that she has no regular sleeping pattern.  Although she did not recount any instances of physical violence, she did say she tended to have trouble with angry outbursts, and that she threw and broke things.  Kresyman claimed to be depressed, which caused her to cry constantly and stay in bed.

Though Kresyman claims to have been disabled since September 2, 2001, her treatment history on record did not begin until a visit to Dr. Anderson on July 5, 2002.  Kresyman complained of pain in multiple parts of her body, fatigue, migraines, tremors, allergies, gastroesophageal reflux, and depression.  She also told Dr. Anderson that she previously had been diagnosed with fibromyalgia.

Dr. Harlan examined Kresyman on referral from Dr. Anderson on July 18, 2002. He observed that Kresyman's strength was hampered by give way weakness. He also perceived no neurological abnormalities that would support Kresyman's complaints of weakness and gait instability. Dr. Harlan opined that these complaints seemed embellished. Before Kresyman left his office, Dr. Harlan assured her that things looked good.

Dr. Katzenstein examined Kresyman on October 22, 2002. He observed give way weakness in Kresyman's legs.

On March 25, 2003, during one of her examinations of Kresyman, Dr. Anderson explained, "Interestingly [Kresyman] describes extreme levels of pain but whenever I see her in the office she is smiling and absolutely in [no apparent distress] whatsoever." (Tr. 132). Dr. Anderson continued, "I have never seen her at a moment that I thought she was in any type of distress or pain." (Tr. 132).

Dr. Morrison, a state agency physician, completed a non-examining mental assessment on July 6, 2004. He opined that Dr. Horner had performed a consultative examination the previous month. Dr. Morrison opined that Dr. Horner's findings did not support his conclusion that Kresyman had poor ability to maintain concentration and attention. Based on the medical evidence he reviewed, Dr. Morrison thought it was reasonable to conclude that Kresyman was psychologically capable of handling a low-stress, low-skill work-like environment. Dr. Morrison also believed available psychological treatment would improve Kresyman's ability to work.

On April 19, 2005, Kresyman presented to Dr. Moore, her treating physician. Dr. Moore noted that Kresyman denied current medical problems.

On that same date, Dr. Butt examined Kresyman. He diagnosed bipolar disorder and posttraumatic stress disorder and prescribed medication. On May 23, 2006, Dr. Butt observed that Kresyman's mood had stabilized, her anger and irritability did not present problems, and she got along with others. He listed similar findings on June 22, 2006, September 19, 2006, January 10, 2007, October 29, 2007, and December 6, 2007. On March 28, 2008, Kresyman informed Dr. Butt that she had been off her medicine for more than a month. She complained of excessive sleep, poor energy, an unstable mood, and anxiety.

On September 27, 2006, Kresyman presented to Dr. Younger and complained of headaches. Dr. Younger observed that Kresyman had a normal station and gait. She also opined that Kresyman had normal memory, judgment, and insight, as well as a normal capacity for sustained mental activity and abstract thinking.

Dr. Garner performed a consultative physical examination on July 30, 2008. Kresyman told Dr. Garner that her bipolar disorder was well controlled with medication. She also reported irritable bowel syndrome, and claimed that when she took medication, she had no difficulty with daily bowel movements. After her search for tender points, Dr. Garner noted that Kresyman did not meet the requirements necessary to diagnose

fibromyalgia.[3] At the conclusion of the examination, the only physical problems Dr. Garner found were located in Kresyman's left knee, with Kresyman's remaining complaints being subjective and unverified.

At the January 9, 2009 hearing, Kresyman testified that her migraines were tolerable, as long as she was on her medication. She also said she used the restroom all day due to diarrhea. She claimed that on a really good day, she could leave the restroom for five to ten minutes at a time.

Dr. Winfrey, a medical expert, testified that Kresyman's only mental impairment was well controlled bipolar disorder. She testified that a consultative examination performed by Dr. Israel was of limited value, as Dr. Israel based his conclusions on a finding of cognitive disorder, but did not provide a sufficient explanation for reaching that diagnosis. Dr. Winfrey opined that Kresyman's medical records did not support cognitive disorder. She also opined that although Kresyman had faced many challenges in the year before the hearing, Kresyman had coped with them fairly well. From a mental standpoint, Dr. Winfrey believed that Kresyman could sustain employment.

Dr. Brahms, another medical expert, also testified at the hearing. He opined that Kresyman's neurological examinations did not reveal significant abnormalities. He also opined that Kresyman could perform sedentary work. Dr. Brahms claimed that Kresyman's MRI results were essentially negative.

---

[3] According to the medical source statement attached to Dr. Garner's report, Kresyman only possessed four of the eleven tender points necessary to diagnose fibromyalgia.

The vocational expert testified that Kresyman had past relevant work as a nurse's assistant and cashier. She also testified that both jobs were classified as semi-skilled work, the former with medium exertion, and the latter with light exertion. The ALJ asked the vocational expert to consider a hypothetical claimant with Kresyman's residual functional capacity for the period after July 3, 2009. The vocational expert testified that the hypothetical claimant could work as a production checker, with 750 jobs in the state and 39,000 nationwide; order clerk, with 1,200 in the state and 75,000 nationwide; and circuit-board inspector, with 1,800 in the state and 98,000 nationwide.

After considering the testimony of the vocational expert and Kresyman's age, education, work experience, and residual functional capacity, the ALJ determined that Kresyman was capable of working in the national economy from September 2, 2001 to the present. Therefore, the ALJ concluded that Kreysman was not disabled.

## II. Discussion

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008). "The decision of the ALJ is not outside the

zone of choice simply because [a reviewing court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quotation omitted).

The Commissioner's regulations governing determinations of disability establish a five-step sequential evaluation process which ALJs must use in assessing disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008). In the first three steps of the process, the Commissioner determines whether the claimant is engaged in substantial gainful activity, whether the claimant has a medically determinable impairment that is severe under the meaning of the Act, and whether the claimant suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at § 404.1520. At step four, a claimant must establish that her RFC is such that she is not able to return to any past relevant work. *Id.*; *see also, e.g.*, *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (clarifying that the claimant has the burden of showing an inability to work). If the claimant establishes that he or she is unable to return to past relevant work, the burden shifts to the Commissioner to show that the claimant can perform some work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner may meet this step five burden by relying on the medical-vocational guidelines or on vocational expert testimony. *See Pearsall*, 274 F.3d at 1219. This Court now considers Kresyman's two arguments against the ALJ's finding that she was not disabled: (1) the ALJ did not give appropriate weight to every medical opinion, and (2) the ALJ did not consider all evidence when formulating Kresyman's two RFCs.

### A. The ALJ gave appropriate weight to every medical opinion.

Generally, treating physicians' opinions are entitled to controlling weight. 20 C.F.R. § 416.927(d)(2). An ALJ may not disregard the opinions of treating physicians to rely on the medical opinions of consulting physicians, except (1) where the consulting physicians' assessments are supported by better or more thorough medical evidence, and (2) where a treating physician issues inconsistent opinions that undermine the credibility of those opinions. *See Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (internal quotations omitted).

When evaluating the relative weight of medical opinions, the Court must consider several factors, including: (1) examining relationship, (2) treating relationship, (3) supportability of the opinion, (4) consistency, (5) specialization, and (6) any factors the applicant or others bring to the ALJ's attention. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)). The opinion of a treating medical source, if not a physician or other acceptable medical source, should still be considered, but those other medical source opinions are entitled to less weight than that of a treating physician. 20 C.F.R. §§ 404.1527, 416.927; *see also* SSR 06-03p; *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

Kresyman argues that the ALJ gave too little weight to the opinion of Dr. Christine Moore, Kresyman's treating physician. Kresyman also complains that the ALJ did not

clearly identify the weight given to the opinions of other doctors in Kresyman's medical history.

It is well established that an ALJ may grant less weight to a treating physician's opinion if it conflicts with substantial medical evidence in the record. *See, e.g.*, *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000). In his opinion, the ALJ explained why he discounted Dr. Moore's opinion that Kresyman was disabled. First, the ALJ noted that Dr. Moore was a family practitioner, not an orthopedist. Unlike Dr. Moore, one of the medical experts who testified at the January 9, 2009 hearing, Dr. Brahms, was an orthopedist. In Dr. Brahms' opinion, Kresyman was capable of sedentary work. Second, the ALJ pointed out that Dr. Moore supported her opinion only with subjective complaints made by Kresyman and not with objective evidence. Third, the ALJ remarked that Dr. Moore was not a psychologist or a psychiatrist, and that without mental status examination results needed to reach definitive medical conclusions, Dr. Moore's opinion was "not well supported by medically acceptable clinical and laboratory diagnostic techniques and the opinions are inconsistent with other substantial evidence in the record." (Tr. 320). Dr. Winfrey, a psychologist who testified at the January 9, 2009 hearing, concluded that Kresyman could sustain employment from a mental standpoint.

Instead of disproving the medical opinions of Dr. Brahms, Dr. Winfrey, and the doctors discussed above, Kresyman criticizes the ALJ for not explicitly stating the weight given to each medical opinion. Yet, throughout his opinion, the ALJ's detailed examination of the medical record made clear the weight he afforded to the medical

11

opinions. When the ALJ did not believe that the evidence supported a medical opinion, such as the opinions rendered by Dr. Moore and Dr. Garner, the ALJ explained why he did not find the opinion to be consistent with the evidence. Similarly, when the ALJ discussed medical opinions supported by the evidence, the ALJ explained why he found the opinions persuasive.

Because this Court is convinced that the ALJ properly assessed and weighed each medical opinion in order to reach his conclusion, it finds no error in the weight afforded to the medical opinions in the record.

> **B.  The ALJ considered all the evidence when formulating Kresyman's two RFCs.**

RFC is a "function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004). RFC is the most an individual can do despite the combined effect of all credible limitations. 20 C.F.R. § 416.945. It is the claimant's – not the Commissioner's – burden to establish that her RFC is such that she is not able to return to any past relevant work. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The ALJ need only include limitations that he finds credible. *See Pearsall*, 274 F.3d at 1218 (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987)). The ALJ's RFC determination must be based on some medical evidence, and he is not able to substitute his own opinion. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Still, the

ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Id.* (internal citation omitted).

Kresyman focuses her RFC argument on the ALJ's failure to appropriately weigh every medical opinion, which essentially faults the ALJ for not unconditionally adopting the favorable disability opinion rendered by Dr. Moore. To support this assertion, Kresyman provides a lengthy list detailing every one of her medical visits since 2002. However, as outlined above, the ALJ's decision to give little weight to Dr. Moore's opinion was supported by substantial evidence.

Kresyman's argument that the ALJ did not consider all medical evidence in the record is unsupported. For more than seven pages in his opinion, the ALJ described the evidence in the record and highlighted the most relevant parts. *See Wiese v. Astrue*, 552 F.3d 728, 734 (8th Cir. 2009) ("[T]he ALJ provided a thorough analysis of the inconsistencies he noted in the record, and those inconsistencies are supported by the record."). Because the ALJ properly discounted Dr. Moore's opinion and thoroughly recounted the medical and non-medical evidence on which he based his RFC determination, this Court finds that the ALJ's RFC determination is supported by substantial evidence.

## III. Conclusion

Accordingly, it is hereby ORDERED that Christine L. Kresyman's Complaint [Doc. # 1] is DENIED.

                                                                       s/ Nanette K. Laughrey
                                                                       NANETTE K. LAUGHREY
                                                                      United States District Judge

Dated:  February 22, 2010
Jefferson City, Missouri